## Elmore v. Commonwealth.

March 22, 1940.

K. S. Alcorn, Judge.

444

W. H. W. Reynolds and Charles J. Walker for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

The appellant, Owen Elmore, a negro boy 17 years of age, was convicted of the rape of Margaret Coyle, a white girl 14 years of age, and the verdict of the jury fixed his punishment at death. From the judgment entered on that verdict this appeal is prosecuted.

The appellant and the prosecuting witness are children of tenant families and have resided for more than three years on adjoining farms, the houses being about ½ mile distant. About 9 o'clock on the morning of

April 12, 1939, Margaret, accompanied by a white girl and a sister of appellant, went to the mail boxes on the rural route about ½ mile east of the appellant's home. After the mail arrived appellant started to his home by the usual road. Margaret, together with her white girl companion and appellant's sister, left the mail boxes and went to the residence of a neighbor from which she started home alone. Her home is west of the appellant's home and she traveled through a field near his home on regular trips to and from the mail box. After leaving the neighbor's house and starting home she saw the appellant standing with one foot on a fence near his home. At this time she says the appellant was shooting a sling shot and watched her as she walked down the road. She went on through a field towards her home and saw appellant start towards his home. She testifies that about half-way between her home and appellant's home she crossed a creek and entered a road-way that follows the creek for some distance and then turns towards her home and that after she had crossed the creek and traveled this road for a few yards she was overtaken by the appellant who threw her to the ground and raped her by force. She states that appellant put his finger down her throat to keep her from hollering and in doing so scratched her face; that she hollered as loud as she could but no one heard her and came to her rescue. After appellant accomplished his purpose, she states, he told her she had better not tell it but she told him she would tell it if she lived. She went immediately to her home and told her mother what had happened, whereupon her mother sent for her father who was out at work. On the arrival of the father he immediately took Margaret to the county seat and had her examined by a physician, Dr. J. E. Edwards. The testimony of this physician shows beyond a doubt that some one had had sexual intercourse with the girl shortly prior to his examination. On completion of this examination a warrant was taken out and appears to have been issued for an older brother of appellant. The record is not very clear as to what happened in this connection but at any rate the sheriff, armed with this warrant, arrested and brought in two older brothers of appellant. Apparently, on being confronted with the older brothers, Margaret did not identify either of them as being the guilty party and the sheriff thereupon went back to ap-

pellant's home and arrested him and brought him to town. Dr. Edwards, in testifying as to Margaret's con·versation with him at the time of his examination, says that she told him about seeing the appellant standing with his foot on the fence at the time mentioned above and he asked her if the boy that raped her was the one she saw at the fence and "she said he looked like him and about the size of him but his clothing looked a little different, some difference about his clothing, she was not sure, the boy was about the size of the boy she saw on the fence, something different about the clothing." The following question was then asked him:

"Q. And she was not sure that the boy that attacked her was the boy she saw on the fence? A. She could not say definitely."

On the trial Margaret identified appellant positively as the one who committed the assault on her and when asked how she identified him stated "by the scar over his right eye." Evidence was introduced by appellant tending to show that his older brother, who had been arrested and who was dead at the time of the trial, had a scar over his right eye also.

After appellant's arrest his shoes were taken from him and were compared with tracks in the mud at the point where he was standing with his foot on the fence and also at the place where Margaret says she was assaulted. These shoes had toe and heel plates on them and a patch on the sole of one of them. Margaret pointed out to officers the place in which she says she was assaulted and these officers testify that tracks found in the vicinity of the place pointed out by her compared with the shoes worn by appellant and exhibited the peculiar markings of the patch on the shoe sole.

The appellant denies the assault and states that when he left the point where he was standing with his foot on the fence, as testified to by Margaret, he went directly to his home and was immediately sent by his mother, in company with his brother, to drive in some turkeys and did not see Margaret any more that morning and was not even in the hollow at the point where she says she was assaulted. He is supported in this testimony by his mother, brother and sister. After appellant's arrest he was questioned by officers who stated

that he flatly denied the crime but stated that while driving the turkeys he was in the hollow in which the crime is alleged to have taken place.

Some hours after appellant's arrest the sheriff, county attorney, a deputy sheriff and others went to appellant's home and notified his mother that they desired to search the house. They testify that she willingly gave them permission to do so. This is not disputed by the mother, who testified on the trial. On this search a pair of overalls, wet from the knees down and having damp mud on the knees and a sling shot in the pocket, were found in appellant's room. These overalls were introduced in evidence on the trial and, as may readily be seen, probably played a potent part in securing a conviction.

It will be seen from the foregoing statement of the evidence that it was amply sufficient to sustain the verdice of the jury. In fact, it is hardly contended by counsel for appellant that the verdict is flagrantly against the evidence. The most that can be said in appellant's behalf in this connection is that the evidence as to the arrest of the appellant's brothers and Dr. Edward's testimony as to some slight uncertainty on Margaret's part as to the actual perpetrator of the crime is sufficient to cast just a slight shadow of doubt as to whether or not appellant or his older brother was the guilty party

Grounds argued for a reversal are 1) that certain witnesses were improperly permitted to testify as to tracks in the vicinity of the alleged crime; 2) that the taking of appellant's shoes for a comparison with the tracks at the scene of the crime was a violation of the rule against self incrimination; 3) that error was committed in permitting officers who questioned appellant to testify that he told them he was in the hollow where the crime was committed on the morning in controversy; 4) that the court failed to instruct the jury on the whole law of the case; and 5) that the overalls found on the search of appellant's home were erroneously admitted in evidence because the search was illegal and in violation of appellant's constitutional rights.

In support of ground 1 we are cited to Appalachian Stave Co. v. Pickard, 266 Ky. 565, 99 S. W. (2d) 472, in which it was held that in an action arising out of an au-

tomobile collision testimony of witnesses concerning tire tracks which were pointed out to them at the scene of the accident on the following day by an occupant of plaintiff's automobile was inadmissible, as being hearsay, notwithstanding such witnesses and occupant were cross examined. An examination of that case reveals, however, that the occupant of the plaintiff's automobile not only pointed out to the witnesses the scene of the accident but also pointed out those things that the witnesses claimed they observed. It also appears in that case that there was no evidence to show that conditions had remained the same from the time of the accident until the witnesses made their observations on the following day and that there were no distinguishing marks by which the automobile tracks seen by them could be identified as having been made by the defendant's car. On the contrary, the evidence disclosed that a number of automobiles had passed back and forth along the road after the accident and before the witnesses went to the scene of the accident. In the present case the prosecuting witness took the officers to the scene of the crime on a remote country road a few hours after the crime was committed and the officers themselves were the ones who made the examination and discovered the foot prints. These tracks did contain distinguishing marks indicating that they were made by shoes similar to the ones worn by appellant. There was no evidence indicating that any other persons had left tracks in the vicinity of the crime or that conditions had changed to any extent whatever between the time of the commission of the crime and the time of examination by the officers. We are of the opinion that the trial court committed no error in permitting these witnesses to testify to what they saw at the place pointed out to them as the scene of the crime by the prosecuting witness in view of the fact that she testified as to the location of the place where the crime occurred.

Ground 2 raises the question whether or not the taking of appellant's shoes by the officers for a comparison of the tracks at the scene of the crime amounted to a violation of Section 11 of the Constitution which provides that the accused in a criminal prosecution cannot be compelled to give evidence against himself. It seems clear to us that this action on the part of the offi-

cers was not a violation of the appellant's constitutional rights in this particular. This provision against self incrimination is generally considered to be a limitation as to testimonial compulsion directed against the defendant as a witness, that is, compelling the defendant himself to say or do something which has a tendency to incriminate himself. The mere taking of appellant's shoes from him did not compel him to do any act tending to incriminate him. The evidence of the officers who made the comparison was evidence in itself unaided by any statement or act of the appellant. The precise point appears not to have been decided in this state but in Biggs v. State, 201 Ind. 200, 167 N. E. 129, 64 A. L. R. 1085, it was held that the taking of his shoes from one charged with a crime to show that tracks made by them were like tracks found near the scene of the crime did not violate the constitutional provision against self incrimination. The annotation to that case in A. L. R., citing scores of cases, demonstrates that in practically every jurisdiction in which this question was raised it was decided that the rule against self incrimination had not been violated. The trial court committed no error in permitting this evidence to go to the jury.

The third ground of reversal is predicated on the contention that the statement of appellant that while he and his brother were driving turkeys he was in the hollow where the prosecuting witness says she was raped was obtained from him by plying him with questions in violation of the Sweating Act, Kentucky Statutes, Section 1649b-1. It seems to us there is little merit in this ground. In the first place the statement made by appellant and testified to by the officers was not a confession— appellant steadfastly denied guilt. The statement was merely one having a tendency to establish guilt. All of the evidence indicates that answers made by appellant to questions asked him were made freely and voluntarily. As pointed out in Powell v. Commonwealth, 276 Ky. 234, 123 S. W. (2d) 279, the Sweating Act is intended to exclude only convictions obtained through the applications of improper means amounting to duress or putting in fear or the offering of inducements. The appellant when he testified made no pretense or gave the slightest intimation that he was placed in fear or that any improper means were resorted to in order to elicit

information from him. We are of the opinion the trial court committed no error in admitting this evidence.

In support of ground 4, that the trial court failed to instruct on the whole law of the case, appellant insists that an instruction should have been given under Kentucky Statutes, Section 1155, subsection (2), prescribing a penalty for having carnal knowledge of a child between the age of 12 and 16 years with her consent. We are cited to Stewart v. Commonwealth, 225 Ky. 731, 9 S. W. (2d) 1087, and Gilley v. Commonwealth, 280 Ky. 306, 133 S. W. (2d) 67, as supporting this contention but we do not regard those cases as in point since in each of them the evidence was such as to require the giving of that character of instruction and this was pointed out in those opinions. In each of those cases the court said there was evidence from which the jury might have concluded that the defendant had sexual intercourse with the prosecuting witness with her consent and evidence of this character was pointed out with particularity in those opinions. In the instant case there is no direct evidence, nor evidence as to any circumstances, indicating that the intercourse which the prosecuting witness says the appellant had with her was with her consent. The only circumstances urged in the argument as indicating this are that the girl's outcry was not heard and that her statements as to the amount of force used were indefinite and unconvincing. In answer to this argument it may be stated that the girl testified most positively to her outcry and that appellant put his finger in her mouth to stifle the sound and she further testified that he threw her down to accomplish his purpose and after consummation thereof threatened her if she told. We conclude that the trial court, in view of the evidence introduced, correctly instructed only on rape by force.

We come now to the fifth and most serious ground urged for reversal, namely, that the evidence obtained on the search of appellant's residence should have been excluded because the search was in violation of his constitutional rights under Section 10 of the Constitution of Kentucky and the Fourth Amendment to the Constitution of the United States, which guarantee the right of the people to be secure against unreasonable searches and seizures. The right thus guaranteed is a personal right and is broad enough to cover the appellant as a

member of the family, residing with his father and mother, since it was his dwelling as well as theirs.

The search was not made at the time of appellant's arrest and as an incident thereto but was made hours thereafter and on a later visit to his home by the officers. The legality of the search must therefore be determined as in the ordinary case of a search of a dwelling house without a search warrant.

It is argued for appellant that his mother, in the absence of his father, who was the head of the house, had no right or authority to consent to a search of the dwelling for the purpose of securing evidence against him. This raises a question not free from doubt, but one that we find unnecessary to decide, since we have reached the conclusion that the evidence is insufficient to show that a waiver of appellant's immunity against a search of his dwelling without a warrant was intended or effected by his mother.

We have here a case of an ignorant negro woman, in the absence of her husband who was the head of the household, confronted by a posse consisting of officers and citizens requesting the right to search the home for evidence against her son—a request which under the circumstances was, to her at least, the equivalent of a demand and a demand from those who were known to her as ''the law.'' In her eyes ''the law'' was supreme and something not to be resisted or opposed—her apparent acquiescence in the search was most probably a mere outward manifestation of her recognition of the supremacy of the law, given at a time and under such circumstances that a failure to acquiesce might result in disaster to her home and family.

In Amos v. United States, 255 U. S. 313, 41 S. Ct. 266, 268, 65 L. Ed. 654, two federal officers went to the defendant's home without a warrant and, not finding him there, told his wife they were officers and had come to search the premises, whereupon she opened the door and the search was made. In excluding evidence obtained on the search the court said:

''The contention that the constitutional rights of defendant were waived when his wife admitted to his home the government officers, who came, without warrant, demanding admission to make search

of it under government authority, cannot be entertained. We need not consider whether it is possible for a wife, in the absence of her husband, thus to waive his constitutional rights, for it is perfectly clear that, under the implied coercion here presented, no such waiver was intended or effected.''

In Duncan v. Commonwealth, 198 Ky. 841, 250 S. W. 101, a sheriff and his deputy went to a defendant's home in his absence and told his wife they understood there was some whiskey there but that they had no search warrant, whereupon the wife invited them in to search. Citing the Amos case with approval, the court held the coercive situation implied from the presence of the officers was such as to show that there was no purpose on the wife's part to waive her husband's right and that under the circumstances there was in fact no waiver.

These authorities deal only with the situation where one is claimed to have waived the rights of another. Possibly a waiver of one's own rights might be upheld under circumstances which could not be regarded as sufficient to sustain a waiver of the rights of another. Had there been a charge of crime against appellant's mother and the search made for evidence against her, it might be that her acquiescence in the search, as shown by the evidence, would be sufficient as a waiver of her own rights, but we are dealing with an infant, one about whom the law throws every reasonable protection and in whose favor the tendency is to resolve every doubt.

We cannot escape the conclusion that under the implied coercion presented by the circumstances shown in evidence, the attempted waiver by appellant's mother of his immunity from the search of his dwelling without a search warrant was ineffective for that purpose. The search being illegal, the trial court should have excluded all evidence found thereby, since objection was seasonably made. The failure to do so was prejudicial and reversible error.

Judgment reversed with direction to grant the appellant a new trial and for further proceedings not inconsistent with this opinion.

The Whole Court sitting.