## DEVINE v. COMMONWEALTH.

Court of Appeals of Kentucky.

May 29, 1953.

John L. Ward, Harrodsburg, for appellant.

J. D. Buckman, Jr., Atty. Gen., and Zeb A. Stewart, Ass't. Atty. Gen., for appellee.

STEWART, Justice.

William Clifford Devine was tried for the crime of rape, found guilty and sentenced to life imprisonment without the privilege of parole. He appeals from the judgment, complaining that the circuit court erred: (1) In admitting in evidence his confession which he claims was procured in contravention of the "Sweating Act"; (2) in overruling his motion to discharge the jury because they had separated; (3) in permitting the Commonwealth's attorney on cross-examination to ask incompetent questions relative to his former conviction on a felony charge; and (4) in allowing the jury to deliberate and reach a verdict after they had been discharged.

The sufficiency of. the evidence to take the case to the jury and sustain the verdict is not questioned; consequently, it be-

comes unnecessary to mention the name of the victim or set forth the details of a most reprehensible act.

The accused argues, however, that the trial court committed a reversible error in ruling competent over his objection the evidence of two police officers who testified as to the oral confession the accused made to them, it being contended the confession was obtained by what he calls "sweating" methods, which methods are denounced by KRS 422.110. The record discloses that after the commission of the offense with which the accused was charged he was apprehended in Cincinnati, Ohio, and that officers, Joseph B. Wilson and Charles Young, went to this city to bring him back to Kentucky for trial. According to each officer, the accused voluntarily and freely admitted his guilt during the time they were returning to this state by automobile. Later, he signed a written confession in their presence. Wilson stated the accused was told beforehand that anything he might say would be used against him. The accused testified he made the oral confession as a result of persistent questioning and insisted he had not read the written confession when he signed it. The officers denied these statements.

While KRS 422.110 makes a confession obtained by "sweating" incompetent and inadmissible, it also leaves the question of the competency and the admissibility of such to the trial judge. The Sweating Act is intended to exclude only confessions secured through wrongful means, such as by coercion or by putting in fear or by the offering of inducements. Elmore v. Commonwealth, 282 Ky. 443, 138 S.W.2d 956. This Court has held that "plying with questions" to the extent that a prisoner feels compelled to answer in order to escape from pressure makes a confession involuntary. Bennett v. Commonwealth, 242 Ky. 244, 46 S.W.2d 84. But it was not established that such methods were employed here. After giving due consideration to the testimony of the officers and of the accused we conclude there was no violation either of the letter or of the spirit of the Sweating Act and that the trial judge was fully justified in admitting this evidence.

The accused next insists that his motion to discharge the jury for the reason that they had been separated was erroneously overruled. This ground is based upon the affidavits of Ansel Devine and John L. Ward filed in support thereof. The affiants stated in effect that, after court had been recessed on the first day of the trial, the sheriff took the jury in custody and quartered them at Avalon Inn in Harrodsburg; that at approximately 7:30 p. m. of that day the sheriff and 8 of the jurors were seen standing in the street about 15 or 20 feet north of the front door of the Inn; that after about ten minutes 2 more of the jurors were seen to emerge from the Inn and join the other 8 jurors; and that these 10 and the sheriff then proceeded across the street to a place where the 2 remaining jurors were waiting. The accused asserts it would have been impossible for any of the 9 men from their position outside the Inn to have seen what the two men were doing on the inside. The Commonwealth countered with the affidavits of the sheriff and the 12 jurors, all of which brought out in substance that, as the jurors were leaving the Inn after supper, two of the men entered the rest room opening on the Inn lobby for a minute or so, but that the door of the rest room was in full view of the sheriff and the others, and that at no time did any one else make contact with the two men while they were absent from the main group. E. B. Miller and Ernest Riley, the two jurors who went into the rest room, said in their affidavits that they entered it separately and that no one was in it or in the lobby of the Inn when each did so.

From the sworn statements of the sheriff and the entire jury, which were not contradicted, it is clear the two men in question were under the surveillance of the officer the whole time and it was also definitely shown that there was no opportunity for improper influence to be exercised over them. Even the recitation set forth in the accused's affidavits leaves us in serious doubt that anything out of order could conceivably have taken place. Two cases which we will not mention by name are relied upon for reversal, but we think they are clearly distinguishable as to facts from

the one herein. In both there was every chance that some outsider could have approached and tampered with the separated jurors. We find no such possibility here, and we cannot say the trial judge committed prejudicial error in his ruling on this issue.

Coming to the third ground urged for reversal, the accused contends the trial court erroneously overruled his objections to certain questions asked him with respect to the particular offense for which he had been previously convicted of a felony. He was interrogated as follows:

"Q. You have been convicted of a felony, have you not? A. Yes.

"Q. On what charge? A. Driving a car without the owner's consent.

"Q. How much time given you? A. Two years."

At this point the trial judge intervened, broke off this line of testimony and properly admonished the jury to consider this evidence only in so far as it affected the accused's credibility as a witness, assuming it tended to do so.

Although section 597 of the Civil Code of Practice, which applies in this connection, does not permit the impeachment of a witness by reference to wrongful acts of a particular nature, it specifically allows that witness to be questioned concerning his previous conviction of a felony. We have held that the witness may also be asked what the felony was, such as was done here. Smith v. Commonwealth, Ky., 245 S.W.2d 584; Matters v. Commonwealth, Ky., 245 S.W.2d 913. Aside from this, the trial judge, by admonishing the jury, took the necessary step to protect the rights of the accused. Thus there is no merit in this contention.

The last ground assigned for reversal is that the jury was permitted to return a verdict after it had been discharged. The bill of exceptions shows conclusively that this did not happen. It is undisputed that the jurors were having trouble agreeing on a verdict and that they had twice reported they could not decide the case. Finally, they came back into the courtroom and four

or five stated in their opinion it was not possible for them to agree. Thereupon the trial judge remarked it was not his intention to force them to further consider the case in the event there was no reasonable likelihood of their reaching a verdict. He further said that "they would be discharged," and requested them to remain in their seats in the jury box a few moments. The circuit judge was at the time conferring with certain officials, as the record discloses, "for the purpose of seeing whether the case of Commonwealth v. Patterson would be tried this term, Patterson being jointly indicted with this defendant (the accused)." Evidently he wanted to settle this point before giving his attention to the jury again. We quote from the bill of exceptions as to what occurred thereafter. It reads: " * * * In about ten minutes from the time the jury came out and announced to the Court that it was impossible to reach a verdict, as previously stated, and after the Court had told them they would be discharged, but to remain in their seats, the jury continuing to remain in their seats in the Court Room, two of the jurors came forward to the bench and requested the Court to permit the jury to retire again to see if they could reach a verdict, and that they believed there was a chance they could reach a verdict. Counsel for the defendant objected to the Court's entertaining the request, for the reason, as stated, that the jury had already been discharged. The Court overruled the objection and permitted the jury to retire accordingly and consider further their verdict, to which ruling the defendant excepted and still excepts." After a brief interval the jury returned the verdict.

From the foregoing detailed account, taken from the bill of exceptions, and which stands unrefuted, we are of the opinion and we so hold that the jury had not been discharged when the verdict was returned.

We find that no error was committed in the trial below and that the accused's substantial rights have not been prejudiced. Wherefore, the judgment is affirmed.