James RILEY, Movant,

v.

COMMONWEALTH of Kentucky,
Respondent.

Supreme Court of Kentucky.

September 1, 1981.

---

Jack E. Farley, Public Advocate, Donna
Boyce Proctor, Asst. Public Advocate,
Frankfort, for movant.

Steven L. Beshear, Atty. Gen., Carl Miller, Asst. Atty. Gen., Frankfort, for respondent.

STERNBERG, Justice.

On April 9, 1979, the Grand Jury of McCracken County, Kentucky, returned a three-count indictment against movant for:

1.  First-degree robbery, a Class B felony, in violation of KRS 515.-020(1)(b)(2);

2.  Theft by unlawfully taking a Pontiac automobile having a value of over $100, a Class D felony, in violation of KRS 514.030(1)(a)(2); and

3.  Theft by unlawfully taking a revolver having a value of over $100, a Class D felony, in violation of KRS 514.-030(1)(a)(2).

Movant pled not guilty to all counts. He and a co-indictee, Willie Holland, were tried together. After a three-day jury trial, movant was found guilty of first-degree robbery and sentenced to serve ten years' imprisonment. He was also found guilty of the theft of a revolver and sentenced to serve ten months in jail. He was found not guilty of the theft of an automobile. On appeal to the Court of Appeals of Kentucky, the judgment of the trial court was affirmed. On March 3, 1981, this court granted review. 614 S.W.2d 538. We reverse.

There are two issues presented on this appeal, which are:

"I. The appellant was denied his due process right to a fair trial and his presumption of innocence by his forced participation in a prejudicial courtroom demonstration.

II. The trial court deprived appellant of due process of law by denying his motion to exclude any pre-trial or in-court identification evidence."

The Mini-Mart grocery store in Paducah, Kentucky, was robbed shortly before midnight on January 16, 1979. Mrs. Sue Roach Jeffords, the only clerk present on that occasion, described the incident. Two masked robbers entered the store as she was in the process of closing. One of the robbers announced that "This is a holdup." The shorter of the two men had a dark-handled handgun stuck in the front part of his trousers; the taller man was flourishing a 38-caliber chrome-colored handgun and pointing it at her and at two customers whom he and the other robber had forced to lie down on the floor. The two robbers then went to the cash register where Mrs. Jeffords was standing and forced her to give them all of the money. The taller robber, standing close to the cashier, pointed the gun at her and demanded that she put the money in a sack, which she did. The smaller robber demanded that she pick up the drawer in the cash register; however, without waiting for her to do so, he picked it up, fumbled around, and then threw it down. The robbers ordered Mrs. Jeffords to face the wall. She did as ordered, and the robbers made their escape. Mrs. Jeffords, after waiting about thirty seconds, went to the door and locked it, then called the city police and reported the robbery. She described one of the robbers as being a young black male, approximately 5 feet 9 inches in height, slim of build, black curly hair, and wearing a black trench coat and a black silk scarf over his face as a mask. She described the other robber as being a black male, approximately 5 feet 10 inches in height, slim of build, black curly hair, and wearing a long dark blue coat and having a black silk scarf over his face as a mask. Within less than one hour after the robbery, movant and Willie Holland were apprehended by the police. Mrs. Jeffords was brought to police headquarters where she viewed movant and Holland in an identification lineup and searched through a mug-shot book for their pictures. She was not able to find any pictures of the robbers in the book, although a picture of each of them was in it. Also, she was unable to identify movant or Holland in the lineup, even though they were the only persons in the lineup. She again confronted movant at a preliminary hearing on February 13, 1979, but she was not able to connect movant as the person in the lineup.

On the second day of the trial, the court, on motion of the Commonwealth's Attorney and over vigorous objection of counsel for movant, required movant to put on the black silk scarf as a mask, take the 38-cali-

ber revolver in his hand, stand close to the cashier clerk, and make the same or similar statement that was said to her by the robber, after which the witness identified movant as being in the store on the night of the robbery. The trial court, on motion of the Commonwealth's Attorney and over objection of counsel for movant, ordered Holland to put on the black trench coat, the mask, and place the black handgun inside the front of his trousers, after which the witness identified Holland as being one of the robbers. At no time during the trial prior to this demonstration did the Commonwealth's Attorney ask any witness to identify movant as one of the robbers.

Prior to commencing the trial, the court conducted an in-chambers hearing on movant's motion to suppress all of the pretrial evidence, which the court refused to do.

The United States Supreme Court, in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), laid down five factors which should be considered in evaluating identification, as follows: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.

In the application of factors 3, 4, and 5, the pretrial eyeball identification is far from satisfactory. The initial attempt at lineup and mug-shot identification proved useless and of no avail to the Commonwealth, although there was less than one hour between the robbery and the attempted identification. The level of certainty was not such as to reliably tie movant to the robbery if we do not take into consideration other demonstrative incriminating evidence such as clothing that the robbers wore and its recovery in close proximity of the robbery, and movant's possession of the weapon used in the robbery and its' being found with the coat and scarf abandoned by the robber. Movant fits the general description of the larger of the two robbers.

Movant and Holland were apprehended in a taxicab, and although the weather was cold, movant did not have on a coat or jacket. He only had on a pair of blue jeans and a flannel shirt.

Even in the absence of proper or adequate eyeball identification, there was adequate circumstantial evidence to bring movant to trial and to support the verdict of the jury. The refusal of the trial court to suppress the identification evidence was proper.

We now turn our attention to the action of the trial court in requiring movant and his co-indictee to demonstrate to the jury the appearance of highwaymen performing an armed robbery.

Movant and Holland were tried together and on the night of the robbery were traveling together. It is logical, therefore, for a jury to consider the testimony of one of them, or the testimony of a witness as it is directed to one of them, to affect the other. Consequently, the act of each would improperly affect the other. Movant's argument that he was denied a fair trial by reason of the courtroom demonstration is meritorious. The propriety of such demonstration has not met with unanimous accord. Such action on the part of the court is approved in some jurisdictions, while in others it is condemned. This court, in *Bradley v. Commonwealth*, Ky., 439 S.W.2d 61 (1969), was confronted with a procedure that had been followed in conducting a lineup for identification purposes. Therein the accused was "required to wear the hat and coat found in his hotel room." In refusing to suppress the identification, we said, "The totality of circumstances attending the line-up do not suggest any substantial possibility of a mistaken identification, and we are of the opinion that there was no violation of due process."

In effect, what this court did in *Bradley* is to give credence to the practice of requiring an accused to provide demonstrative evidence from which a witness may identify the actor as the person who committed the criminal offense, while, on the other hand,

looking to the suggestiveness of the totality of the circumstances. For example, an accused may be required to be fingerprinted, *Jaggers v. Commonwealth*, Ky., 439 S.W.2d 580 (1969); to furnish his shoes for comparison with footprints, *Elmore v. Commonwealth*, 282 Ky. 443, 138 S.W.2d 956 (1940); to permit blood to be taken for comparison purposes, *Newman v. Stinson*, Ky., 489 S.W.2d 826 (1972); *Gall v. Commonwealth*, Ky., 607 S.W.2d 97 (1980); to provide samples of handwriting for comparison, *Francis v. Commonwealth*, Ky., 468 S.W.2d 287 (1971); to permit hair to be taken from the accused's head or from other parts of his body, *Garr v. Commonwealth*, Ky., 463 S.W.2d 109 (1971), Cert. denied 403 U.S. 910, 91 S.Ct. 2219, 29 L.Ed.2d 687.

"At the trial itself, an accused may be required to stand so that he may be observed; to remove a veil, visor, mask, glasses; to exhibit his hands; to roll up his sleeve to show a tattoo; to submit to the taking of his fingerprints; to remove his coat and shirt to show scars; to allow inspection of his face for identifying marks; to move his feet into view; or to put on a garment, hat, or cap. If the accused has testified on his own behalf, he may be required, on cross-examination, to roll up his sleeve to show a wound; to allow his feet to be measured; to demonstrate certain actions or positions; to pronounce certain words; or to provide a sample of his handwriting." Wharton's Criminal Procedure, 12th Edition, Sec. 392, p. 18.

We see no reason to depart from our former holdings at this time.

We are confronted with three unsuccessful attempts toward identifying the movant as one of the robbers. It was not until the second day of the trial, with both movant and his coindictee seated in the courtroom in full view of the witness, that identity was attempted and then only by the means of the use of a skit which we might call "dressing for the jury."

Actually, a strict reading of the testimony of Mrs. Jeffords reflects that she did not identify movant as one of the robbers. Counsel for the Commonwealth asked her the following questions:

"94. Other than the fact that that man did not have a jacket on, dark jacket on, can you tell us if that man was in your store that night?

A. Yes, he was.

95. Any question in your mind about it?

A. No."

Certainly the witness meant to actually identify movant as one of the robbers; however, this is only one of several acts that detracts from the Commonwealth's efforts to identify movant as one of the robbers.

In *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the United States Supreme Court said, "We turn now to the question whether petitioner . . . is entitled to relief on his claim that in any event the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law. This is a recognized ground of attack upon a conviction . . . ."

In the case at bar, the witness was not identifying the person of movant; she was identifying the clothing with which movant was invested. The dress rehearsal held before the jury, when considered in light of the totality of the circumstances, was so unnecessarily suggestive and conducive to irreparable mistaken identity that movant was denied due process.

Therefore, the judgment of conviction of the McCracken Circuit Court is reversed and remanded for a new trial.

PALMORE, C. J., and AKER, LUKOWSKY, STEPHENS, STEPHENSON and STERNBERG, JJ., sitting.

PALMORE, C. J., and AKER, STEPHENS, STEPHENSON and STERNBERG, JJ., concur.

LUKOWSKY, J., concurs in the result only because: (1) the playlet produced by the prosecution at trial to obtain an "eyeball" identification was so suggestive, in-

flammatory and void of probative value that it deprived the defendant of due process of law and a meaningful trial by jury; and (2) there was sufficient independent circumstantial evidence of identity to carry the case to the jury.