Rontez P. COLBERT, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 1998–SC–1070–DG.

Supreme Court of Kentucky.

Feb. 22, 2001.

As Modified on Denial Rehearing
May 24, 2001.

Bruce P. Hackett, Frank Wm. Heft, Jr., Louisville, for appellant.

A.B. Chandler III, Attorney General, Courtney J. Hightower, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, for appellee.

Opinion of the Court by Justice GRAVES.

This case presents an issue of first impression in Kentucky: The validity of a mother's consent to police officers' warrantless search of her adult son's bedroom located in her home, as well as of his personal effects, including a closed safe, absent direct evidence she had common authority over the room.

Shortly after 1:00 a.m. on Dec. 26, 1995, Louisville police received a call concerning a domestic disturbance at Delores Colbert's home, requesting help with her 19–year–old son, Appellant Rontez Colbert, who had become enraged and was "trashing" the home they shared with Delores' younger son. When officers arrived, Appellant was putting on a bulletproof vest and barricading himself in the house. Officers tried to apprehend Appellant, who attempted to evade them, tipping over furniture as he ran. Eventually he was caught, arrested and taken outside. He asked an officer to retrieve a specific pair of shoes and a jacket from his bedroom in the basement before they took him to jail.

Another officer approached Delores and explained to her that Appellant had a reputation for being violent. He was, in fact, believed to be involved in at least one shooting earlier that year. The officer then asked for permission to search his room for weapons. Delores agreed, and at a suppression hearing, the officer recount-

ed her words as "you can search anywhere in the house you want to and do whatever you gotta do; do whatever you want to do." These words were never disputed because, although Delores was expected to be a defense witness at the suppression hearing, she made it known that she preferred not to testify and, as such, was never called.

When officers entered Appellant's room, they discovered the walls covered with what they identified as gang graffiti and summoned a photographer. They also discovered several plastic containers for handguns. Continuing the search, they found a small fireproof safe on the floor and opened it. The record does not disclose whether the safe or the bedroom door was locked. The safe contained six individually wrapped bundles of marijuana, about 19 grams of crack cocaine in fifty bundles, cash, an extended gun clip, and photographs of Appellant and others with weapons. All of this evidence was confiscated.

Following a hearing on September 24, 1996, the Jefferson Circuit Court denied a motion to suppress the items seized from the bedroom. On February 5, 1997, Appellant entered a conditional plea of guilty to charges of first degree trafficking in a controlled substance, trafficking in marijuana, resisting arrest, and second degree assault. He received five years each on the controlled substance and second degree assault charges and twelve months each on the marijuana and resisting arrest charges, all to run concurrently for five years imprisonment. Pursuant to his conditional plea, he appealed the order denying the motion to suppress the items found in the safe. The Court of Appeals recognized this as an issue of first impression and, relying on *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), held that Appellant's mother pos-

sessed common authority over her own household and could consent to a search of the entire premises. The court continued that, even if she lacked actual authority, she had apparent authority over the premises and it would have been reasonable for the officers to believe she possessed authority to consent to a search of Appellant's room, pursuant to *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).

Appellant appeals on the basis that, although no evidence was presented to show his mother did not have a right of entry, she could not consent to the search because the room was in his exclusive control, and, absent a warrant, the search should be held unconstitutional and the evidence suppressed. Furthermore, he contends that her authority over the house did not extend to his safe. Finally, he argues that officers should not be permitted to use third-party consent to bypass the first party, when the latter is still available to give or deny consent. After reviewing the record and hearing oral argument, we affirm the decision of the Court of Appeals.

## I. CONSENT TO SEARCH OF THE BEDROOM WAS VALID

In *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the United States Supreme Court recognized that there is a heightened privacy interest in one's own home and that the Fourth Amendment generally prohibits warrantless entry, whether to search for objects or to make an arrest. This general prohibition may be overcome by any of the valid exceptions to the warrant requirement, including consent to search, whether obtained from the individual who is the target of the search, *see Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), or from a third

party who possesses common authority over the premises. *See Matlock, supra.* The burden of proof to show an exception rests with the government. *See Gallman v. Commonwealth,* Ky., 578 S.W.2d 47, 48 (1979).

Appellant argues that Kentucky law gives a more expansive reading to the protections against search and seizure than is offered by the United States Constitution's Fourth Amendment. First, Appellant cites *Elmore v. Commonwealth,* Ky., 282 Ky. 443, 138 S.W.2d 956, 960 (1940), arguing that this Court held that "The right [against warrantless search and seizure] thus guaranteed is a personal right and is broad enough to cover the appellant [17–year–old youth charged with rape] as a member of the family, residing with his father and mother, since it was his dwelling as well as theirs."

The *Elmore* line of reasoning is inapplicable. That case did not turn on the protections afforded Elmore by the Kentucky Constitution, but rather was based on whether his mother's consent to search was voluntary. The 1940 case also shows a paternalistic attitude toward women in general, and black women in particular, which cannot be reconciled with modern thinking. The *Elmore* Court reserved the question of whether it was possible for a wife to consent to the search of the home in the absence of her husband, but suggested that allowing such to occur would be to allow the wife to waive her husband's constitutional rights. In *Commonwealth v. Sebastian,* Ky., 500 S.W.2d 417, 419 (1973), this Court held that a wife may consent to a search of the home in the absence of her husband, and that the consent was not the wife's waiving of the husband's rights, but an assertion of her own rights of control over the shared spaced.

Appellant does not raise the issue of voluntariness of consent on appeal, and *Elmore, supra,* is, if not a case which has outlived its usefulness, at least inapplicable here. Appellant's mother was the homeowner and the head of the household. To protect her person and her property, she summoned the police to remove Appellant from her home. She also agreed to the search and gave the police unlimited authority to search anywhere they wanted.

■ Appellant also cites *Commonwealth v. Wasson,* Ky., 842 S.W.2d 487 (1992), a privacy case concerning a man convicted under an anti-sodomy law, to show the expansiveness of Kentucky's interpretation of the right to privacy. *Wasson* involved personal lifestyle choices for private consensual sexual activities, and held that the Kentucky Constitution's guarantees of individual liberty "offer greater protections of the right of privacy than provided by the Federal Constitution as interpreted by the United States Supreme Court...." *Id.* at 491. This Court, however, has never extended these greater protections to the rights in property interests against warrantless search and seizure. What we have said, as recently as four years ago, is "[S]ection 10 of the Kentucky Constitution provides no greater protection than does the federal Fourth Amendment." *LaFollette v. Commonwealth,* Ky., 915 S.W.2d 747, 748 (1996) (citing *Estep v. Commonwealth,* Ky., 663 S.W.2d 213 (1983)).

■ Both state and federal courts have interpreted search and seizure law to allow third parties to consent to the search of shared common areas. *See Morris v. Commonwealth,* 306 Ky. 349, 208 S.W.2d 58 (1948) (father's consent to search as "head of household" for incriminating evidence against son valid for evidence found in the kitchen) and *Matlock, supra,* (consent of a woman who shared a bedroom with her boyfriend in her parents' home

valid). Furthermore, in *United States v. Hall*, 979 F.2d 77 (6th Cir.1992), the Sixth Circuit Court of Appeals held that a homeowner may consent to the search of a tenant's room, even though he never entered it while it was rented to the tenant. In *Hall*, the homeowner indicated that he had access to the room at all times, and that some of his personal items were stored in an adjacent room which was accessible through Hall's room. If Hall's rental agreement did not provide enough privacy to keep his landlord from consenting to a search of his room and dresser, then surely Appellant in this case can be afforded no more protection from the search to which his mother consented. Appellant never paid rent for his basement bedroom, nor did he present any evidence to indicate that he and his mother had agreed to his exclusive control of it. Like any homeowner, in the absence of an understanding to the contrary, the mother retained the right of entry to all areas of her house including the room Appellant occupied.

In Wayne R. LaFave's treatise on search and seizure, he notes that the power of a parent to consent to a search of the home derives not so much from the idea of common authority as it does from the status of parent. Wayne R. LaFave, *Search and Seizure*, Vol. III, Chap. 8, § 8.4(b), p. 765 (3d ed.1996). LaFave notes that "courts tend to recognize a superior right in the parents to keep the family home free of criminal activity." *Id.* at 770. For example, the Minnesota Supreme Court in *State v. Kinderman*, 271 Minn. 405, 136 N.W.2d 577 (1965), upheld the father's consent to the search of a 22–year–old son's room. That court stated:

> If a man's house is still his castle in which his rights are superior to the state, those rights should also be superior to the rights of the children who live in his house. We cannot agree that a

child, whether he be dependent or emancipated .... has that same constitutional rights of privacy in the family home which he might in a rented hotel room.

*Id.* at 580.

Echoing this sentiment, the California Court of Appeals in *People v. Daniels*, 16 Cal.App.3d 36, 93 Cal.Rptr. 628, 632 (1971) held that the mere fact that a son is permitted to use a particular room in his parents' home does not confer upon him exclusive control. His occupancy is subservient to that of his parents and he may be excluded at any time. It logically follows that a parent not only has a right of entry but also the right to authorize the entry of other persons.

State courts abound with decisions similar to that made by the Kentucky Court of Appeals, allowing a parent to consent to the search of a child's bedroom, most of which derive from parental authority over the family home. *See People v. Lucero*, 720 P.2d 604 (Colo.Ct.App.1985) (no evidence that mother relinquished control of room, despite having her own reasons for never entering it); *People v. Brooks*, 277 Ill.App.3d 392, 214 Ill.Dec. 79, 660 N.E.2d 270 (1996) (no evidence that room was locked or that son had left instructions not to enter it); *People v. Goforth*, 222 Mich. App. 306, 564 N.W.2d 526 (1997) (although son was 18 years old and paid rent, nothing indicated that mother lacked access to the room); *State v. Cole*, 706 S.W.2d 917 (Mo.Ct.App.1986) (A person living with his family can expect more intrusion that an independent renter living with nonrelatives).

The United States Supreme Court held in *Matlock, supra*, that the test for whether third-party consent was permissible was "common authority over or *other sufficient relationship* to the premises or effects sought to be inspected." 415 U.S. at 171,

94 S.Ct. at 994. (Emphasis added). At least one court has held that an example of a "sufficient relationship" is parental authority, particularly when the son pays no rent. *Howard v. State*, 207 Ga.App. 125, 427 S.E.2d 96 (1993). Kentucky has previously considered the issue of a search of a child's bedroom, although under slightly different circumstances. In *Gray v. Commonwealth*, 198 Ky. 610, 249 S.W. 769 (1923), our highest Court held that competent evidence was obtained from the search of an adult son's bedroom. Officers arrived at the house with a search warrant, but obtained consent for the search from the suspect's mother. As the search was finishing, the son arrived home and objected to the search, but officers continued on the grounds they had a warrant.

At trial, the warrant could not be produced, but the court nonetheless upheld the search based on the mother's consent:

> Except for the agreement of the householder that the officers might make the search, the point would be well-taken, but the evidence shows without contradiction that Mrs. Gray agreed that the officers might search her home, and it has been held by this court that, where there is such consent for a search, the officer may make the same, even though he has no warrant or an insufficient one.

*Id.* at 769.

Thus, the mother's consent to search was a valid basis for the search of her son's room in her home, even over his objections.

## II. MOTHER COULD CONSENT TO SEARCH OF SAFE

Because the consent search of the room was valid, we must now consider the search of the safe. Appellant relies on a portion of *Sebastian, supra*, which holds that a wife may consent to the search of the marital home, but adds, "An exception would be where, by agreement or understanding, the wife did not have access to a particular room or a particular container." 500 S.W.2d at 419. This argument fails in this case on several accounts. First, as stated above, no evidence was produced that Delores did not have access to the safe, only that she did not use it. Appellant's counsel stated in oral argument that neither side introduced evidence as to the safe's ownership, but only noted that photos showed the safe covered in the same graffiti as the room. Furthermore, while Appellant is correct that no evidence was presented to show whether the safe was locked or simply closed, his counsel stated at oral argument that the safe was searched contemporaneously to the rest of the room. The police officer testified at the suppression hearing that he needed no assistance to gain access to the unsecured fireproof safe, but merely opened it.

Second, the *Sebastian* court emphasized that the wife had just as much right to control the house as did the husband. As noted above, most courts would not agree that the adult offspring living in the family home have the same rights as a spouse does. Where a wife might have to show that there was common authority over a particular room or container under *Sebastian, supra*, it does not automatically hold that a mother would have to show common authority (i.e., shared usage) of the effects in her son's bedroom when she is the owner of the premises and head of the household. Furthermore, Appellant and his mother had no "agreement or understanding" that she would not open the safe, at least not evidenced in the record. Thus, *Sebastian* is inapplicable.

The third reason that Appellant's reliance on *Sebastian* is misplaced is a decision by this Court ten years after *Sebastian*, in *Estep, supra*. Relying on the United States Supreme Court automobile search case, *United States v. Ross*, 456

U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (search of any part or compartment of a vehicle where the object searched for could be hidden allowed when officer had probable cause to search), the *Estep* court held that a warrant to search a home would extend to closets, drawers and containers in which the object of the search might be concealed. On the subject of warrantless searches, we stated:

> The scope of a warrantless search is defined by the object of the search and the places in which there is probable cause to believe it may be found. A lawful search of a fixed premises generally extends to the entire area in which objects may be found and is not otherwise limited.

*Estep, supra,* at 215.

■ Here, an officer sought permission from Appellant's mother, who had a superior property interest in the home to search his room for weapons. When officers entered, they noticed a closed safe. Police were reasonable in assuming that if Appellant was hiding weapons in his room, they could be hidden in this safe. In fact, officers found a clip from a weapon in the safe. This search was lawful under *Estep, supra.* Finally, while *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), is often cited for the proposition that the government should protect reasonable expectations of privacy, the United States Supreme Court in *Katz* also cautions that these expectations should be those "society is willing to acknowledge as reasonable." 389 U.S. at 361, 88 S.Ct. at 516 (Harlan, concurring). The right to have an exclusive hiding place for drugs or weapons in one's mother's home, particularly in this case when Delores' shock at its discovery demonstrated she did not want it there, is hardly an expectation of privacy that society would acknowledge as reasonable.

## III. DESPITE SUSPECT'S PRESENCE, MOTHER'S CONSENT WAS VALID

■ Finally, Appellant asserts that even if his mother could have given consent to search the room and safe in his absence, her consent would not override his objection when he was on the premises, and that officers bypassed asking him for consent. Because of her superior right in the home, Appellant's mother was permitted to give consent, despite his presence. In *Matlock, supra,* where the man and his girlfriend had equal rights to the bedroom which was searched, the Supreme Court held the consent given by the girlfriend was valid, even though Matlock had been taken into police custody in the front yard of the home. Similarly, other states have applied this theory to parents and children, and have determined that, particularly in the case of minors, the parent's authority is controlling. *See Vandenberg v. Superior Court,* 8 Cal.App.3d 1048, 87 Cal.Rptr. 876 (1970). In *Hembree v. State,* 546 S.W.2d 235, 241 (Tenn.App.1976), the Tennessee Court of Appeals, when faced with a case in which an 18–year–old son gave consent to search his parents home, also held that the parents had a superior interest:

> [T]he rights of an 18–year–old son to the use or occupation of the premises are not necessarily equal to the rights of use or occupation of his parents.... [W]hen the parents are in the custody of the law ... and are equally accessible to give or withhold consent to search, the consent and cooperation of the son does not waive the constitutional rights of the parents.

LaFave says that bypassing the suspect is "especially proper when the police have instead obtained the consent of a person with a superior interest in the place

searched." *Search and Seizure, supra,* at 737. Such occurred in *Gray, supra,* where Court our predecessor allowed evidence to be admitted because of the mother's consent, despite the suspect's objections at the time of the search.

■ While we hold that Appellant's mother had the authority to consent to a search of her home and Appellant's safe, as the parent and homeowner, the consent also would have been valid on the principle of apparent authority. In *Rodriguez, supra,* the United States Supreme Court held that a consenting party has apparent authority if "the facts available to the officer at the moment ... 'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises[.]'" 497 U.S. at 188, 110 S.Ct. at 2801 (quoting *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). We are of the opinion that officers in this case were reasonable in relying on the belief that Delores Colbert, as the head of the household, had given a valid consent to the search of that household, including Appellant's room and its contents therein.

The judgment of the Jefferson Circuit Court is affirmed.

LAMBERT, C.J., COOPER, GRAVES, and WINTERSHEIMER, J.J. concur.

KELLER, J., dissents in a separate opinion in which JOHNSTONE, J., joins as to I(B) only, and STUMBO, J., joins.

KELLER, Justice, dissenting.

I believe that the citizens of this Commonwealth still enjoy the protections of the Fourth Amendment to the United States Constitution[1] and Section Ten of the Kentucky Constitution. The Commonwealth's search of Colbert's room and the safe contained within it clearly violated these constitutional protections. Accordingly, I must dissent.

The Kentucky and United States Constitutions prohibit unreasonable searches where persons have a reasonable expectation of privacy.[2] Although the courts of this nation have in recent years limited the scope of the Fourth Amendment through increasingly narrow interpretations of defendants' expectations of privacy,[3] there can be no serious disagreement that Colbert had a reasonable expectation of priva-

---

1. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

2. *See Katz v. United States,* 389 U.S. 347, 351–352, 88 S.Ct. 507, 19 L.Ed.2d 576, 582 (1967) ("For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Id.* (citations omitted)); *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387, 401

(1978) ("[C]apacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Id.* (citations omitted)).

3. *See, e.g., Oliver v. United States,* 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) (No legitimate expectation of privacy in an open field); *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (Prisoner has no reasonable expectation of privacy in his cell); *California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988) (No expectation of privacy in opaque plastic garbage bags left outside the curtilage of a home).

cy in his own bedroom and in a fireproof safe.[4] The majority's assertion that society is unwilling to recognize Rontez Colbert's asserted expectation of privacy in contraband ignores two centuries of case law reversing criminal convictions involving contraband on the basis of unreasonable searches, impermissibly attempts to justify the search on the basis of what the officers found,[5] and overlooks the fact that courts apply the exclusionary rule in order to deter future unreasonable searches.

We have held that warrantless searches are per se unreasonable unless the Commonwealth proves an exception to the warrant requirement.[6] Here, the Commonwealth asserts that it reasonably conducted a search of Colbert's room and fireproof safe after Colbert's mother, Delores, consented to the searches.

The Commonwealth may conduct a warrantless search pursuant to the voluntary consent of someone other than the defendant ("a third party") only when it can prove that: (1) the defendant has expressly authorized the third party to consent to the search; (2) the third party has actual authority to consent to the search as demonstrated by persuasive evidence of both shared use and joint access to or control over the searched area;[7] or (3) the officers who conducted the search reasonably believed, on the basis of the factual information available to them at the time of the search, that the person from whom they obtained consent had the actual authority

---

4. *See, e.g., United States v. Block,* 590 F.2d 535, 541 (4th Cir.1978):

    Common experience ... surely teaches all of us that the law's "enclosed spaces" mankind's valises, suitcases, footlockers, strong boxes, etc. are frequently the objects of his highest privacy expectations, and that the expectations may well be at their most intense when such objects are deposited temporarily or kept semi-permanently in public places or in places under the general control of another. Indeed, to the sojourner in our midst ... the suitcase or trunk may well constitute practically the sole repository of such expectations of privacy as are had.
    *Id.*

5. *See Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441, 453 (1963) ("That result would have the same essential vice as a proposition we have consistently rejected—that a search unlawful at its inception may be validated by what it turns up." *Id.*).

6. *See Gallman v. Commonwealth,* Ky., 578 S.W.2d 47, 48 (1979) ("All searches without a valid search warrant are unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant. *The burden is on the prosecution to show the search comes within an exception."*

*Id.* (emphasis added)). While I would hope that such an elementary principle would not require substantial attention, it appears to me that the majority has overlooked this principle. Although the United States Supreme Court has, consistently and for over fifty years, placed the burden of demonstrating the reasonableness of a warrantless search upon the government, *see e.g., McDonald v. United States,* 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); *United States v. Jeffers,* 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951); *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), today's majority appears, on three separate occasions, to reverse this burden by criticizing Colbert for failing to prove his mother's lack of authority. *See Majority Opinion,* 43 S.W.3d 777 at 779–83 (2001) ("Appellant never paid rent for his basement bedroom, nor did he present any evidence to indicate that he and his mother had agreed to his exclusive control of it." *Id.*); *Id.* at 781, ("[N]o evidence was produced that Delores did not have access to the safe ...." *Id.*); *Id.* at 782, ("Appellant and his mother had no 'agreement or understanding' that she would not open the safe, at least not evidenced in the record." *Id.*).

7. *See United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

to grant consent to the search.[8] Because "express authorization" cases are largely hypothetical,[9] searches conducted pursuant to a third party's consent are usually reasonable only when the Commonwealth can demonstrate the third party's actual or reasonably apparent authority to consent.

In this case, the trial court held an evidentiary hearing on Colbert's suppression motion. The entirety of the "proof" on the reasonableness of the search consisted of the testimony of two police officers. One officer, not present during the search itself, testified only for the purpose of explaining how the arrest citation he prepared in connection with this case erroneously indicated that the search occurred "incident to arrest." The other, Officer Wainscott, testified only that Delores Colbert lived in the home and had, in fact, given her permission for the officers to search Rontez Colbert's room and belongings:

> Also, knowing the person I was dealing with, I requested of Mrs. Colbert if we could look for weapons in, uh, her son's bedroom, which was in the basement, and she told me at that time that I could search anywhere in the house that I wanted to. She said "do what you've gotta do, do whatever you want to do." I told her that would be unnecessary. I didn't have to search the whole house, I'd just like to search for specifically guns, handguns in his room. She's like "fine, go ahead," so at that

point we did and the search was conducted.

The nature of this testimony, which merely established that Delores Colbert did give her permission for the search, begs the question with respect to the relevant inquiry—whether she could actually authorize the search.[10] The Commonwealth did not call Delores Colbert as a witness at the evidentiary hearing, and, in fact, introduced no evidence to prove that: (1) Delores Colbert even possessed a property interest in the house containing the basement room searched pursuant to her authorization; (2) Delores Colbert had any use of, access or connection to either the basement room or the fireproof safe; or (3) that any investigating officer made any inquiry of Delores Colbert which would allow the officers to make a determination of her ability to consent to a search of her son's room. To the contrary, Officer Wainscott's testimony that Delores Colbert appeared "shocked" and "in disbelief" when he showed her the items seized from her son's room raises the inference that her access to the basement room was, at best, limited.

Nonetheless, the trial court denied Colbert's motion after divining that Delores Colbert owned the home and had the right to consent to any search of it:

> [I]t was testified that Defendant's mother, Ms. Colbert gave her consent to search the room. The officers then

---

8. *See Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).

9. *See U.S. v. Block, supra* note 4, at 540 & n. 5 ("In theory, though rarely if ever in fact, third person authority could be derived from an actual agency relationship." *Id.*).

10. *See, e.g., United States v. Welch,* 4 F.3d 761, 764 (9th Cir.1993):
> The dispositive issue in this case is not what areas of the car McGee may have

> intended his consent to encompass, whether or not he intended to authorize a search of any of ,the car's contents, or even what constitutes an objectively reasonable interpretation of his statements to the officers. Rather the issue is whether McGee had the *authority,* either actual or apparent, to give effective consent to the search of his companion's purse.
> *Id.* (italics in original).

searched the room and a safe was found, and the Officers discovered cocaine in the safe. . . .

While the Defendant has an interest in expecting privacy of his room, it is undisputed that his mother as owner of the home had control of the entire household and as such can give permission to have it searched.

As I find the Commonwealth's proof regarding the reasonableness of the search wholly inadequate, I take issue with the factual findings and legal conclusions reached by the trial court.

## I. THE COMMONWEALTH FAILED TO PROVE DELORES COLBERT HAD THE LEGAL AUTHORITY TO CONSENT TO THE SEARCH OF HER SON'S BEDROOM AND SAFE

### A. THE BEDROOM

In *United States v. Matlock*,[11] the United States Supreme Court stated that searches conducted upon the consent of a third party were reasonable when that third party has a sufficient connection to the property searched:

> [R]ecent authority here clearly indicates that the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared. . . . [W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.[12]

In attempting to create objective standards by which to evaluate evidence of a third party's connection with the property searched, the Circuit Courts of Appeal have wrestled with the language of *Matlock*.[13] Today's majority seizes upon the

---

**11.** *Supra* note 7.

**12.** *Id.* at 415 U.S. 164, 170–171, 94 S.Ct. 988, 39 L.Ed.2d 242, 249–250. *See also Id.* n. 7:

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id.* (citations omitted).

**13.** *See generally United States v. Rith*, 164 F.3d 1323, 1328–1331 (1999), *cert. denied* 528 U.S. 827, 120 S.Ct. 78, 145 L.Ed.2d 66 (1999). *See also United States v. Block, supra* note 4 at 539–40 ("[I]t may be based simply upon the fact that the third person shares with the absent target of the search a common authority over, general access to, or mutual use of the place or object to be inspected under circumstances that make it reasonable to believe that the third person has the right to permit the inspection in his own right and that the absent target has assumed the risk that the third person might grant this permission to others ." *Id.*); *United States v. Moore*, 917 F.2d 215, 223 (6th Cir.1990), *cert. denied* 499 U.S. 963, 111 S.Ct. 1590, 113 L.Ed.2d 654 (1991) (applying the language of *Matlock* itself); *United States v. Whitfield*, 939 F.2d 1071, 1074 (D.C.Cir.1991) (requiring proof of *both* mutual use and joint access before a third party has authority to consent to a search); *United States v. Davis*, 967 F.2d 84, 87 (2nd Cir.1992) ("[A] third-party consent to a search will validate the search if two prongs are present: first, the third party had access to the area searched, and second, either: (a) common authority over the area; or (b) a substantial interest in the area; or (c) permission to gain access." *Id.*); *United States v.*

"or other sufficient relationship" language in *Matlock* to support its conclusion that the existence of a parent-child relationship between the third party and defendant creates a rebuttable presumption that the parent has the legal authority to consent to a search of any property within the parent's residence. The majority's holding thus allows the Commonwealth to avoid the "fact-intensive inquiry" [14] necessary to prove that the parent exercised mutual use of the property by virtue of joint access. This mirrors the view of the United States Court of Appeals for the Tenth Circuit:

> [C]ontrol for most purposes of property is a normative inquiry dependent upon whether the relationship between the defendant and the third party is the type which creates a presumption of control for most purposes over the property by the third party. If a relationship creates such a presumption of control and is unrebutted, the third party has authority to consent to a search of the property.
>
> Relationships which give rise to a presumption of control include parent-child relationships.... In contrast, a simple co-tenant relationship does not create a presumption of control and actual access would have to be shown. The difference between a ... parent-child relationship and a co-tenant relationship is that a ... parent-child relationship raises a presumption about the parties reasonable expectations of privacy in relation to each other in spaces typically perceived

as private in a co-tenant relationship. Two caveats are important. First, in determining whether a particular relationship raises a presumption of control for most purposes, ... authority to search is premised on a "practical understanding" of the way parties have access to and share the searched property. Second, while ... parent-child relationships give rise to a presumption of control for most purposes over the property, that presumption may be rebutted by facts showing an agreement or understanding between the defendant and the third party that the latter must have permission to enter the defendant's room.[15]

The majority's holding allows the Commonwealth to prove the reasonableness of a warrantless search by demonstrating only: (1) that a parent-child relationship existed between the third party giving consent and the defendant, and (2) that the parent held a property interest in the home.[16] The "presumption" created today by this Court fills in all the factual gaps.

I see no valid reason for this Court to allow the Commonwealth to justify a warrantless search on the basis of speculative presumptions rather than evidentiary proof. In accordance with the protections of the Fourth Amendment, the courts of this nation have required governments to prove the reasonableness of their warrantless searches in order to prevent the exceptions from swallowing the general rule:

*Rith, supra* at 1329 ("[A] third party has authority to consent to a search of property if that third party has *either* (1) mutual use of the property by virtue of joint access, or (2) control for most purposes over it." *Id.*) (emphasis added).

14. *United States v. Rith, supra* note 13 at 1330.

15. *Id.* at 1330–1331 (citations omitted).

16. Given the paucity of evidence introduced by the Commonwealth at the evidentiary hearing in this case, I have my doubts whether the Commonwealth satisfied even this minimal burden. None of the alleged "facts" concerning Delores Colbert's interests in and connections to this property, including the trial court's characterization of Delores Colbert as "owner of the home," are supported by substantial evidence.

The real issue is whether the evidence offered by the Government, taken at full value, meets the required standard. We hold that it does not; that there has not been a sufficient showing of true consent.... Standards of this sort must be maintained and enforced by the trial and appellate courts. If they are not, the guarantees of the Bill of Rights can quickly disappear through tacit nullification.[17]

The majority's holding relieves the Commonwealth of the need to actually *prove* valid consent, and instead allows a rebuttable presumption premised on this Court's assumptions concerning private space within families.[18] No one has ever supported these assumptions with evidence, but this Court appears comfortable defining the reasonableness of searches and seizures on the basis of its own generalizations. This presumption unquestionably transfers the burden of proof away from the Commonwealth by forcing the defendant to produce evidence to the contrary.

The majority's holding also ignores the plain language of *Matlock* when it elevates in importance the relationship between the third party and defendant above the connection between the third party and the property to be searched.[19] Indeed, unlike today's majority, many of the opinions from other jurisdictions cited by the majority found a parent's consent valid not because of some nebulous concept of "inherent parental authority," but because

17. *Judd v. United States*, 190 F.2d 649, 652 (D.C.Cir.1951). *See also Coolidge v. New Hampshire*, 403 U.S. 443, 454, 91 S.Ct. 2022, 29 L.Ed.2d 564, 575–6 (1971):

> It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure.... It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. ·

*Id.* (quoting *Boyd v. United States*, 116 U.S. 616, 635, 6 S.Ct. 524, 29 L.Ed. 746, 752 (1886)).

18. The United States Court of Appeals for the D.C. Circuit disputes the basis for such a presumption with respect to adult children living under their parents' roofs:

> Officers may of course proceed on the basis of the "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." They may assume that a husband and wife mutually use the living areas in their residence ... so that either may consent to a search. When a minor child's room is involved, agents might reasonably assume that the child's mother, in the performance of her parental duties, would not only be able to enter her child's bedroom, but also would regularly do so. But we are aware of no basis for such an assumption when the child is, as here, 29 years old. The agents in this case had no way of knowing whether parents usually do not permit their adult sons and daughters to have exclusive use of the rooms they occupy and they made no effort to find out whether Mrs. Whitfield had this or some other arrangement with her son.

*United States v. Whitfield, supra* note 13 at 1074–75 (citations omitted). *See also United States v. Duran*, 957 F.2d 499, 505 (7th Cir. 1992) (expressing opinion that an adult child living at home has "as a general rule ... privacy expectations greater than those inherent in a marriage, making it more difficult to demonstrate common authority." *Id.*).

19. *See United States v. McAlpine*, 919 F.2d 1461, 1464 (1990) ("[T]he relevant analysis in third-party consent cases focuses on the relationship between the consenter and the property searched, not the relationship between the consenter and the defendant. While the character of the relationship between the consenter and the defendant may bear on the nexus between the consenter and the property, it is not dispositive of the issue of effective consent." *Id.*); *Id.* at n. 2 ("[I]t is the consenter's relationship to the property, not the tenor of her relationship with the defendant, that

the parent-child relationship, along with other evidence, demonstrated the parent's actual connection to the property searched.[20] Even this Court's leading third-party consent case, *Commonwealth v.. Sebastian,*[21] which addressed a spouse's authority to consent to a search of the home she owned with her defendant husband, emphasized that "[i]n the present case the evidence was that the wife had as much right to the control of the house as did the husband."[22] Other persuasive authority cited by the majority turns upon archaic notions of property ownership which are inconsistent with the post-*Katz* paradigmatic shift in the way courts examine expectations of privacy[23] or relegates

---

is determinative of whether she can permit a search in her own right." *Id.*).

**20.** *See People v. Daniels,* 16 Cal.App.3d 36, 93 Cal.Rptr. 628, 631 (1971):

Pertinent and distinguishing circumstances at bench include the fact that the person consenting to the search was the mother of the defendant who owned exclusively the entire premises, including the bedroom in which he slept. Consent to search was volunteered by the mother rather than requested by the officers....

The evidence supports the inference, implicit in the order denying defendant's motion to suppress, defendant did not have exclusive possession or control over the bedroom which he was permitted to use; and his mother, by virtue of her ownership and the circumstances in the case, had the right to enter and search the bedroom at will. The trial judge who ruled upon the motion to suppress ... expressed the conclusion defendant's occupancy of the bedroom was not exclusive but was subject to the right of the mother to consent to its search.

*Id.; People v. Lucero,* 720 P.2d 604, 606 (Colo. Ct.App.1985):

It is undisputed that defendant's mother voluntarily consented to the search. Although she testified that for her own reasons she never went into the area which defendant occupied, the trial court found on supporting evidence that: (1) she was the owner of the house; (2) defendant was a tenant at sufferance; (3) she controlled the possessory interest of those occupying the house; and (4) the rules concerning what areas of the house were to be used by whom and who would enter what areas of the house were made by her and no one else.

Based on these findings, the trial court concluded correctly that defendant's mother shared joint control over the area with defendant.

*Id.; People v. Goforth,* 222 Mich.App. 306, 564 N.W.2d 526, 531 (1997) ("[D]efendant's mother's preliminary hearing examination testimony demonstrated that she did, in fact, have access to and control over defendant's room." *Id.*); *Howard v. State,* 207 Ga.App. 125, 427 S.E.2d 96 (1993):

Howard's mother leased the premises, which is the substantial equivalent of ... co-ownership, and, ... there was no landlord-tenant relationship between Howard and his mother, in that Howard paid neither rent nor household expenses. Accordingly, we hold that Howard's mother had a sufficient relationship to the residence to consent to a warrantless search of Howard's bedroom.

*Id.*

**21.** Ky., 500 S.W.2d 417, 419 (1973).

**22.** *Id.* The *Sebastian* Court also cited with approval federal authority which held that, " 'It is not a question of agency, or a wife should not be held to have authority to waive her husband's constitutional rights. This is a question of the wife's own rights to authorize entry into the premises where she lives ....' " *Id.* (citing *United States v. Thompson,* 421 F.2d 373 (5th Cir.1970)).

**23.** *See Katz v. United States, supra* note 2 at 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576, 583 ("But '[t]he premise that property interests control the right of the Government to search and seize has been discredited.' ") *Id.* (citing *Warden v. Hayden,* 387 U.S. 294, 304, 87 S.Ct. 1642, 18 L.Ed.2d 782, 790 (1967)). *See also Warden v. Hayden, supra* ("We have recognized that the principal object of the Fourth Amendment is the protection of privacy rather than property, and have increasingly disregarded fictional and procedural barriers rested on property concepts." *Id.*).

the view of today's majority to one judge's separate concurring opinion.[24]

Today's majority salvages this criminal conviction by creating a "shortcut" around (a.k.a. "short-circuiting") the Commonwealth's burden to prove the reasonableness of its warrantless search by demonstrating valid third party consent. In order to do so, the majority removes any meaningful limitation on third-party consent searches in the parent-child context and impermissibly shifts the burden of proof upon the defendant.[25] I simply cannot agree with this conclusion, and I would hold that the Commonwealth failed to prove that Delores Colbert had a sufficient connection with her son's bedroom in order to consent to a search therein.

## B. THE FIREPROOF SAFE

Even if I suspend my disbelief long enough to accept, ad arguendo, the majority's conclusion with respect to Delores Colbert's authority to consent to a search of her son's room, I can find no support for the majority's assertion that this authority automatically extends to the fireproof safe. In fact, all federal authority on point is directly to the contrary:

> While authority to consent to search of a general area must obviously extend to most objects in plain view within the area, it cannot be thought automatically to extend to the interiors of every discrete enclosed space capable of search within the area. The decided cases indicate precisely the contrary: that each such enclosed space stands on its own bottom for this purpose....
>
> This is as it must be for the protection of one of the primary objects of people's ordinary expectations of privacy.[26]

---

**24.** *See People v. Goforth,* 222 Mich.App. 306, 564 N.W.2d 526, 532 (1997) (O'Connell, J. concurring).

**25.** The United States Court of Appeals for the Seventh Circuit analyzed the Fourth Amendment opportunity costs of a similar bright-line rule in *United States v. Duran, supra* note 18 at 505:

> [Consider] a per se rule that common spousal authority extends to every square inch of property upon which a couple's residence is built—in other words ... we presume in every case without further inquiry that every square inch is jointly occupied....
>
> But erecting a per se rule in this context might detach the third-party consent rule from its moorings. Common authority rests upon mutual use and joint access and control. Privacy interests, and the relinquishment thereof, also play prominently, not only from a logical standpoint (one who grants joint access to another, by definition, surrenders a degree of privacy), but also because we are dealing with the fourth amendment and governmental intrusions into the home. The theory of third-party consent, it appears, is that when A shares control over a given premises with B, or grants B fairly liberal access, A surrenders some of his privacy interests in that he necessarily assumes the risk that B will permit inspection of the premises "in his own right." In this light, the per se rule is defective because it presumes that spouses, in forging a marital bond, remove any and all boundaries between them—in other words, that spouses surrender all privacy or other individual interests with respect to one another. Some might argue that this represents the ideal in marriage, and perhaps they are right. But although marriage may be the most intimate of all human relations, this ideal does not reflect reality, either in practice or in the eyes of the law (e.g., prenuptial agreements, community property exemptions for property obtained prior to marriage). Not all spouses share everything with their mates, which is a way of saying that spouses do not surrender every quantum of privacy or individuality with respect to one another.

*Id.* (citations omitted).

**26.** *United States v. Block, supra* note 4 at 541. *See also United States v. Welch,* 4 F.3d 761, 764 (9th Cir.1993) (consent by third party to search of his automobile did not authorize search of defendant's purse); *United States v. Salinas–Cano,* 959 F.2d 861, 863–864 (10th Cir.1992) (consent by third party to search of

The majority opinion acknowledges none of this jurisprudence,[27] and instead concludes that this Court's holding in *Sebastian*[28] does not limit the authority of a head of the household to consent to searches anywhere within the home and that the defendant must introduce evidence proving the third-party's lack of access to a closed container in order to remove it from the scope of a general consent. The majority also holds that the officer's search of the fireproof safe was valid pursuant to *Estep v. Commonwealth*[29] because the officers were searching for handguns and the safe could have concealed a handgun.

her apartment did not extend to defendant's closed suitcase); *United States v. Rodriguez*, 888 F.2d 519, 523–24 (7th Cir.1989) (wife's general consent to search of defendant janitor's closet did not extend to briefcase and closed containers within); *United States v. Wilson*, 536 F.2d 883, 884–885 (9th Cir.1976) ("Although McKee could effectively consent to the agents' search of her apartment, she had neither actual nor apparent authority to consent to the suitcase searches.... She had neither the 'common authority' over nor the 'mutual use' of suitcases that could give constitutional validity to her consent." *Id.*).

27. I find this somewhat surprising in light of the fact that the majority cites to *People v. Daniels, supra* note 20 as support for its conclusion that authority to consent may be presumed from a parent-child relationship. The court in *Daniels* recognized that a general consent to search does not extend to closed containers:

The consent to search covered not only the bedroom as such but also the furniture therein, i.e., the dresser, dresser drawers and bed. On the other hand, the consent did not authorize a search of the defendant's suitcase over which the mother had no actual control, and the evidence does not support a conclusion the officers in good faith, although mistakenly, reasonably believed she had such control. A search of the suitcase extended the scope of the consent and was unlawful....

I must note that the word "consent" does not appear even once in the *Estep* opinion. Today's majority stretches its credibility when it finds unsupported dicta from a case involving a probable cause search of an automobile[30] dispositive as to a question of first impression for this Court concerning the scope of a general consent to search by a third party. As the question presented necessitates interpretation of constitutional law, I believe we should give some weight to views of the United States Supreme Court:

"A privacy interest in a home itself need not be coextensive with a privacy interest in the contents or movements of everything situated inside the home...."

*Id.* at 622, 93 Cal.Rptr. 628 (citations omitted).

28. *Supra* note 21.

29. Ky., 663 S.W.2d 213 (1984).

30. *See, Id.* at 215:

[W]e hold that where probable cause justifies the search of a lawfully stopped vehicle, it also justifies the search of every part of the vehicle and its compartments and contents that may conceal the object of the search.

...

The reasonable expectation of privacy is a particular relevant factor in determining the validity of any warrantless search. In regard to automobiles, the expectation of privacy is limited because of the nature of the unit....

...

Police who have a legitimate reason to stop an automobile and who have probable cause to believe that the objects of the search are concealed somewhere within the vehicle may conduct a warrantless search of the vehicle and all the compartments and containers thereof....

This decision is in harmony with Section 10 of the Kentucky Constitution which protects the people from unreasonable searches because probable cause is still a prerequisite to an automobile search. *Id.*

*A homeowner's consent to a search of the home may not be effective consent to a search of a closed object inside the home . . . .*"

"*When a guest in a private home has a private container to which the homeowner has no right of access . . . the homeowner . . . lacks the power to give effective consent to the search of the closed container.* United States v. Karo, 468 U.S. 705, 725–26, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984) (O'Connor, J., concurring) (citations omitted) (emphasis added); . . . Consent to search a container is effective only when given by one with 'common authority over or other sufficient relationship to the premises or effects sought to be inspected. . . . Common authority . . . rests . . . on *mutual use of the property by persons generally having joint access or control for most purposes.*' " Karo, 468 U.S. at 725, 104 S.Ct.3296 (quoting United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988 & n. 7, 39 L.Ed.2d 242 (1974)) (emphasis added).[31]

The majority's conclusion ignores both logic and the weight of authority:

Suppose Rodriguez had checked his briefcase with United Airlines for a flight. United could have consented to a search of its baggage handling facilities, in which passengers anyway lack privacy interests; no one thinks United could consent to a search of all luggage in its possession. So too with checkrooms at restaurants, parcels in transit with express companies, and other containers in public places. Many a closed container is accessible; opening it requires justification, and courts have had considerable difficulty coming up with stable rules to govern searches of things found in cars. There has been no comparable difficulty with containers found in closets or storage rooms, and the United States has not cited a single case approving a search of a closed container in consequence of a general consent to enter the room in which it was found.[32]

I find the majority's attempt to transfer the burden of proof regarding the scope of the third-party consent *no more* persuasive in its second articulation, and, without repeating them, I reiterate my previously expressed objections.

As the Commonwealth introduced no evidence establishing any connection whatsoever between Delores Colbert and the fireproof safe found in her son's room, I feel comfortable with my conclusion that the Commonwealth failed to prove the validity of Delores Colbert's consent to search the safe.

## II. THE COMMONWEALTH FAILED TO PROVE THAT THE OFFICERS REASONABLY BELIEVED DELORES COLBERT HAD THE AUTHORITY TO CONSENT TO THE SEARCHES

Although the written order denying Colbert's motion to suppress the evidence relied exclusively upon the trial court's conclusion that Delores Colbert had the legal authority to consent to a search of her son's room, both the Court of Appeals and today's majority gratuitously suggest that the searches were reasonable under the "apparent authority" safe harbor identified by the United States Supreme Court in *Illinois v. Rodriguez:*

[W]hat we hold today does not suggest that law enforcement officers may always accept a person's invitation to enter premises. Even when the invita-

---

**31.** United States v. Salinas–Cano, supra note 31 at 863 (italics in original).

**32.** United States v. Rodriguez, supra note 26 at 523–524 (citations omitted).

tion is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry. As with other factual determinations bearing upon search and seizure, determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment ... 'warrant a man of reasonable belief'" that the consenting party had authority over the premises? If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.[33]

In other words, a search may still be reasonable under the "apparent authority" doctrine even when the Commonwealth's officers reasonably, but erroneously, conclude on the basis of the factual information available to them that a third party may give consent to the search. Apparent authority offers no salvation, however, when officers conduct a search upon correct factual information, but "a misapprehension of the applicable rule of law."[34]

Obviously, the majority concludes that the Commonwealth satisfied its burden of proof with respect to the reasonableness of the search because the officers reasonably believed that Delores Colbert had the legal authority to consent to the searches. Given a flawed legal premise—that parent homeowners have plenary power over everything in the residence—the majority could reach no other conclusion. Under the majority's logic, the officers could reasonably conclude Delores Colbert was authorized to consent to the searches upon ascertaining only two facts: (1) She was

the defendant's mother; and (2) it was her house.

Because I believe *Matlock* requires the Commonwealth to prove an actual nexus between the property to be searched and the third party who gives consent which requires more than an appeal to parental authority, I believe that "apparent authority" exists only when officers obtain information which allows them to make an informed decision. As the officers in this case made no attempt to determine whether Delores Colbert had joint access to and mutual use of her son's basement bedroom and the fireproof safe contained therein, I hesitate to classify this search as reasonable on the basis of the officers' perceptions. The United States Court of Appeals for the D.C. Circuit articulated my exact sentiments:

As a factual matter, the agents could not reasonably have believed Mrs. Whitfield had authority to consent to their search. The agents simply did not have enough information to make that judgment.... We will assume the agents' questioning of Mrs. Whitfield, sparse as it was, provided a sufficient basis for their believing she "generally" had "joint access" to her son's room. The room was not locked, at least when the agents were there, and Mrs. Whitfield lived in the house. If "access" carries its common meaning, Mrs. Whitfield had it, as did the defendant—both *could* enter his bedroom.

... But whether she had "mutual use" of the room or the closet containing the defendant's clothing could not be determined from anything the agents asked. The bedroom itself was not a "common area" and the agents had no grounds for

---

**33.** *Illinois v. Rodriguez, supra* note 8 at 497 U.S. 177, 188–189, 110 S.Ct. 2793, 111 L.Ed.2d 148, 161.

**34.** *United States v. Brown,* 961 F.2d 1039, 1041 (2nd Cir.1992).

believing otherwise. The agents never asked Mrs. Whitfield whether she cleaned her son's room, visited with him there, stored any of her possessions in the room, watched television there, or made use of the room at any time for any purpose. The suppression hearing shed *no light on the actual circumstances*....

. . .

It is the government's burden to establish that a third party had authority to consent to a search. The burden cannot be met if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry. If the agents do not learn enough, if the circumstances make it unclear whether the property about to be searched is subject to "mutual use" by the person giving consent, "then warrantless entry is unlawful *without further inquiry* [.]"

The government has not carried its burden in this case. The agents' superficial and cursory questioning of Mrs. Whitfield did not disclose sufficient information to support reasonable belief that she had the authority to permit the search. The agents *could not infer such* authority merely from her ownership of the house. "Common authority is, of course, not to be implied from the mere property interest a third party has in the property." The agents could not ... draw such an inference from the parent-child relationship or from the fact that the room was unlocked, which established only joint access, not mutual use as *Matlock* requires. The remaining piece of information—that defendant had led his mother to think he had no money for rent—did not supply the missing element of mutual use. A landlord-tenant type of arrangement between a parent and an older child might indicate that the child has been given greater autonomy in the house, that his room is his private enclave, a place no one else may enter without his permission. But "rent" or, perhaps more accurately, contributions towards household expenses, cannot be decisive. An adult offspring who pays nothing to his parents might nevertheless enjoy exclusive use of a room within the home, while one who does make payments may have a quite different arrangement. As we have said, under *Matlock* and *Rodriguez* agents faced [with] such situations must make further inquiries before engaging in warrantless searches. If the information gleaned from those inquiries is insufficient to establish apparent authority, the Fourth Amendment demands that the agents procure a warrant. The agents did not do so here, and the search violated the Fourth Amendment.[35]

I would reverse the Court of Appeals and remand the case to the trial court.

JOHNSTONE, J., joins this dissent as to I(B) only, and STUMBO, J., joins this dissent.

---

**35.** *United States v. Whitfield, supra* note 13 at 1074–75 (citations omitted). *See also State v. Kieffer*, 217 Wis.2d 531, 548–552, 577 N.W.2d 352, 359-361 (1998).