**COMMONWEALTH of Kentucky, Appellant**

v.

**Jeremy BROOKS and Hope Garland, Appellees.**

**No. 2011–CA–002075–MR.**

Court of Appeals of Kentucky.

Dec. 7, 2012.

Jack Conway, Attorney General of Kentucky, Samuel J. Floyd, Jr., Special Assistant Attorney General, Louisville, KY, for appellant.

Dorislee Gilbert, Special Assistant to Attorney General, Louisville, KY, for appellant.

Elizabeth B. McMahon, Assistant Public Defender, Louisville, KY, for appellee, Jeremy Brooks.

Cicely J. Lambert, Assistant Appellate Defender, Louisville, KY, for appellee, Hope Garland.

Before CLAYTON, COMBS, and THOMPSON, Judges.

## OPINION

CLAYTON, Judge:

The Commonwealth of Kentucky appeals from the October 14, 2011, order of the Jefferson Circuit Court, which granted the motion of the defendants, Jeremy Brooks and Hope Garland, to suppress evidence of illegal drugs. For the following reasons, we affirm.

On May 24, 2011, Detective Stephen Farmer of the Louisville Metro Police Department received a tip from a confidential informant that Hope Garland was selling narcotics from a home in Louisville, Kentucky. The next day, Detective Farmer conducted surveillance on the home and saw an apparent drug transaction between a female occupant of the home and a passenger in a silver Saturn. The detective followed the Saturn and conducted a traffic stop. The female driver gave him consent to search her purse whereupon Detective Farmer discovered nine hydrocodone pills in it. Both the driver and her husband stated that they purchased the pills from Garland at the home that Detective Farmer had been watching.

Based on this information, Detective Farmer returned to the home with seven other police officers to do a "knock and talk." When he and his fellow officers arrived at the home, three to five people were on the porch. As the police officers approached the home with their badges showing, an unidentified male ran from the porch into the home. The police officers pursued him into the home. Once the individual who had fled was secured, Detective Farmer received written consent

from Houchens, the homeowner, to search the home.

During the police officers' search of the home, the scene was secure and all the persons at the home were sequestered in one location where they could be observed. The police then searched the entire home and found several items in the basement, including a purse which contained eleven hydrocodone, one Xanax, and $451. The purse was searched without a warrant or consent. Garland indicated that it was her purse. At this point, Brooks and Garland were arrested.

In September 2010, the Jefferson County Grand Jury indicted Brooks and Garland on the following charges: second-degree trafficking in a controlled substance (hydrocodone), trafficking in a controlled substance (hydrocodone) within 1,000 yards of a school, illegal use or possession of drug paraphernalia, and possession of marijuana.

Thereafter, both Appellees made motions to suppress the evidence seized during the search of the residence. A hearing was held on September 1, 2011. On October 14, 2011, the trial court entered its opinion and order wherein it found that the search of the basement, where Brooks and Garland lived, was constitutionally valid but that the search of Garland's purse was not conducted with a valid exception to the warrant requirement. It is from this order that the Commonwealth appeals.

The Commonwealth contends that the trial court erred in its suppression ruling because the findings of fact about the police officers' safety did not comport with the substantial evidence presented at the suppression hearing. Further, the Commonwealth maintains that the ruling was incorrect in its application of the law to the facts. In contrast, Brooks and Garland insist that the trial court properly suppressed the evidence obtained in the unconstitutional search of Garland's purse because substantial evidence did not exist to support the search and that the trial court correctly interpreted the law of search and seizure. In essence, they argue that the search of the purse was unconstitutional.

■ In Kentucky, for cases involving suppression, we use the standard of review set out by the United States Supreme Court in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Under that approach, the decision of the circuit court on a motion to suppress, which is based on an alleged illegal search, is subject to a two-part analysis. First, factual findings of the court are conclusive if they are not clearly erroneous and are supported by substantial evidence. *Ornelas v. U.S.*, 517 U.S. at 699, 116 S.Ct. at 1663. *See also Commonwealth v. Neal*, 84 S.W.3d 920, 923 (Ky.App.2002). Thus, the trial court's findings of fact will be deemed conclusive if they are supported by substantial evidence. *Drake v. Commonwealth*, 222 S.W.3d 254, 256 (Ky.App.2007).

■ Second, we conduct a de novo review of the trial court's application of the law to the established facts to determine whether its ruling was correct as a matter of law. *Welch v. Commonwealth*, 149 S.W.3d 407, 409 (Ky.2004). This standard requires no deference on our part to the trial court's application of the law to the facts found. *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky.App.1998). Using this standard of review, we now address the case before us.

■ It is axiomatic that absent exigent circumstances, law enforcement officers may not enter an individual's private residence in order to conduct a warrantless search. *Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63

L.Ed.2d 639 (1980). As noted, "[i]t is fundamental that all searches without a warrant are unreasonable unless it can be shown that they come within one of the exceptions to the rule that a search must be made pursuant to a valid warrant." *Cook v. Commonwealth*, 826 S.W.2d 329, 331 (Ky.1992). Moreover, the Commonwealth bears the burden to demonstrate that exigent circumstances were present justifying a warrantless search. *Vale v. Louisiana*, 399 U.S. 30, 34, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409 (1970). Hence, in the case at hand, the Commonwealth must establish that the warrantless search of Garland's purse falls within a recognized exception. *Gallman v. Commonwealth*, 578 S.W.2d 47, 48 (Ky.1979).

■ Consent is an established exception to the warrant requirement of the Fourth Amendment. *Cook*, 826 S.W.2d at 331. Here, because the homeowner consented to the search of the home, the trial court found that the police's search of the home's basement was lawful. While the Commonwealth does not contest this portion of the decision, it maintains that the trial court's analysis was flawed in regards to whether the search of the purse in the basement was constitutional.

In its order, the trial court explains that "[t]here is no evidence that Det. Farmer searched the purse believing it to contain a hidden danger or weapon that Garland could imminently use against him; in fact, Garland was in a separate room when the purse was searched and could not have immediately accessed the purse." Opinion and Order entered October 14, 2011, at 5. The Commonwealth deems that the trial court's factual finding that "no evidence" existed to support the police's position that the rationale for the search was premised on the police officers' safety is not supported by substantial evidence. We are not persuaded by the Commonwealth's argument.

■ Merely because narcotics and weapons go hand-in-hand in most cases does not support the police's decision herein to search Garland's purse. In fact, she was in another room and supervised by police officers. Moreover, Detective Farmer testified that he was no longer concerned about his safety once the search was conducted. Further, Detective Farmer said regarding information about a previous shooting at the home, that it had been six months to a year prior to this incident and that he was aware that Appellees had only been living at the home for one month. Therefore, the trial court's decision was supported by substantial evidence because the Commonwealth did not establish that police officers' safety was in jeopardy during the search of the purse.

■ Next, the Commonwealth posits that the trial court incorrectly applied the law to the facts because the police officers' search was legitimate based on the connection between narcotics and weapons and the resulting logical implication by the Commonwealth that the safety of its officers was compromised. Again, we remain unpersuaded. The people in the house were not in the basement where the purse was found. They were under the supervision of police officers. Contrary to the Commonwealth's arguments, no exigent circumstances have been proven by them in this particular scenario to justify a warrantless search of the purse. The trial court correctly applied the law to the facts.

■ Lastly, the Commonwealth proffers that even if the safety concerns are disregarded, the third-party consent to the search of the home authorized the search of the purse. Based on the third-party consent, the Commonwealth claims that

the trial court's legal analysis was erroneous. We disagree.

The Commonwealth cites *Estep v. Commonwealth,* 663 S.W.2d 213 (Ky.1983), for the proposition that a warrantless search is defined by the object of the search and the places where there is probable cause to believe that it may be found. First, we observe that *Estep* did not involve third-party consent but whether police had the authority to perform a warrantless search of a car's glove compartment when probable cause existed to stop the car and search the passenger area. Thus, *Estep* is only applicable where a lawful search occurs. The search of Garland's person without consent or a warrant was unlawful.

Regarding the Commonwealth's reference to *Colbert v. Commonwealth,* 43 S.W.3d 777 (Ky.2001), again the circumstances are distinguishable. In *Colbert,* the police searched a safe in the defendant's bedroom based on his mother's permission to search the home. The Court gave great credence to the parent-child relationship and a parent's authority over the family home. The Court determined that in those specific circumstances, the mother's consent was adequate to permit a search of a safe in the son's room. Here, Houchens had authority to permit a search of her home. But, given the relationship between Houchens and the Appellees, it is very difficult to understand that the consent to search the home would extend to someone else's closed purse.

■ Finally, keeping in mind that it is the Commonwealth's burden of proof to demonstrate that the search of the purse met an exception to the Fourth Amendment jurisprudence, we do not believe that it has done so. If the police had specifically asked Houchens if it was her purse, she would have said "no." Further, Garland was in another room in the house and, at that time, not under arrest. Since she was

in another room, as previously noted, no imminent concern about the police officer's safety was alluded to nor did the Commonwealth establish that the police officer feared for his safety. Significantly, no reason has been given for not asking Garland's consent to search the purse. Lastly, the Commonwealth has not shown that it would have been unable to obtain a search warrant to inspect the purse. Certainly, its arguments support the presence of probable cause for a search warrant.

The Commonwealth relies heavily on federal cases from the Seventh Circuit as supportive of its position that the homeowner's consent to search the home/basement extended the police officers' authority to search another party's purse. But in *U.S. v. Jackson,* 598 F.3d 340 (7th Cir. 2010), a case cited by the Commonwealth, the federal court acknowledged:

> "For purposes of searches of closed containers, mere possession of the container by a third party does not necessarily give rise to a reasonable belief that the third party has authority to consent to a search of its contents." [*U.S. v.*] *Basinski,* 226 F.3d [829] at 834 [ (7th Cir.2000) ]. "Rather, apparent authority turns on the government's knowledge of the third party's use of, control over, and access to the container to be searched, because these characteristics are particularly probative of whether the individual has authority over the property." *Id.* Accordingly, we conduct a fact-specific inquiry to decide whether someone had actual or apparent authority to consent to a search. *See* [*U.S. v.*] *Groves,* 530 F.3d [506] at 509–10[ (7th Cir.2008) ]; *Basinski,* 226 F.3d at 834–35 (observing that "it is less reasonable for a police officer to believe that a third party has full access to a

defendant's purse or a briefcase than, say, an open crate").

*Id.* at 347.

The facts of this case do not provide any legal authority that extends Houchens' consent to search her home to Garland's purse. Therefore, the trial court correctly applied the law to the facts herein.

Based on the foregoing reasons, the order of the Jefferson Circuit Court granting Brooks's and Garland's motions to suppress the items seized from Garland's purse is affirmed.

ALL CONCUR.